is 2595-97 Yang v. Blanche. Counsel for the appellant, if you'd make your appearance and proceed. Good morning, Your Honors. Good morning. May it please the Court, Jason Weiskopf, appearing for Petitioner Hugh Yang. Your Honors, in this case, there is no dispute. That there is any longer any substantive basis for the removal of Petitioner from the United States. The government thus falls back on procedural hurdles in an attempt to justify the board's denial of the motion to reopen. Indeed, the board, in its decision, stated that this is a sympathetic case. The board also stated that Petitioner had faced hardships. The board further stated that Petitioner did undertake efforts to obtain post-conviction relief and did so. Your Honors, obviously, this is a deferential standard that we have in this case. And generally, in those type of cases, this court does defer to decisions by the board and the immigration apparatus. But, Your Honor, there's a difference between a deferential standard and a toothless one. When you get into certain decisions where you have courts exploring where that line lays, for example, Your Honor, and in my brief, I cited the Cruz case. Where the Third Circuit found that in instances where a conviction had been voided for procedural and substantive reasons, that was a reason to reopen the case. In this case, didn't the board spot in that up until 2017, when that law was adopted, that they would say it was extraordinary circumstances, but it was the delay after that point that caused them to decide that equitable tolling was not appropriate? That does seem to be one of their findings, Your Honor. And it is kind of the board's decision is kind of a mismatch of different things. They do at some point say that there is after that point. But if you look at the timeline of what happened after 2017, Your Honor, just going through it briefly, at first he makes a FOIA request. So before you do that, let me ask you a question. So when does the clock start? The day that the law that gave him the ability to have his conviction vacated was signed into law or became effective? That's when I would believe the clock would start, Your Honor, because previous to that, any other actions he could have taken would have been more performative, right? I mean, the government kind of comes up in their brief. They're kind of talking about theoreticals. They're struggling about things that could have happened, he could have done. But he had an aggravated felony on his record, and he couldn't have had that removed until this law was passed. According to everything in the record, again, the government doesn't offer any hypotheticals as to anything he could have done previously, again, that would have just been performative. But as a matter of law, the notion that the clock starts at 2017, what basis is there in law for that? I mean, do you have any authority that supports that? I mean, the reality is that he had to seek a reopening in a period of time that was certainly before 2017 as a matter of law, right? Right, except for the extent where you have an exceptional situation where you have, for example, the passage of this law. Well, I'm talking about reasonable diligence, and the point is you say performative, but he didn't do anything. And he didn't do anything until 2025. Not even given the law being passed in 2017, he didn't do anything until 2025, did he? Well, he attempted to start to find counsel, Your Honor. He was not well-versed. He was attempting, starting in 2017 when he filed the FOIA, when he started looking for counsel. He did obtain counsel in 2018, wasn't able to pay them, went forward with that. And I understand what Your Honor is saying, that maybe at some point, yes, he should have been exercising due diligence before that, but there was nothing for him to do. Well, post—well, there's the question of whether as a matter of law he needed to be showing that he was trying to do something before 2017. To use Judge McHugh's word, let's say we spot that and say we're focusing only 2017 forward. Then the question becomes what did he do from 2017 forward? And that's where there still seems to be a hurdle because, I mean, at least by your client's own statement, when he saw that Laotians and other Southeast Asian people were being deported, he decided to act. Well, why should that be a good enough explanation? Because that sounds like strategically I decided, oh, well, I'm doing okay, but now they're starting to deport people, and so I need to do something. What about that as due diligence? Well, I think a, you know, motivation to redouble one's efforts is not necessarily it. And, again, if you look at the timeline— It's not necessarily what? It's not necessarily—a decision to redouble your efforts on something does not eliminate the fact that he was looking for counsel, that he was having numerous health issues, that he was unable to pay for counsel, that he was trying to reach out and contact counsel. It wasn't until 2025 that he even became aware during one of many consultations that he could vacate his conviction, Your Honor. And so it's not that he wasn't taking— Say that again? It wasn't until when that he was aware he could vacate his conviction? It was, I believe, in 2025, Your Honor. Then why was he even contacting counsel in 2017? He was attempting to find out any methods he could go about to try to deal with that, Your Honor. And he did have periodic attempts to contact counsel throughout that whole period. No, I'm getting back to when he was—when he first found out that he might be able to attack his sentence. I mean, it seems coincidental that he started in 2018 right after the law passed and became effective. And—but we're arguing today that he didn't know anything about the ability to do that until 2025. Well, it's not that he didn't know—necessarily know that he could do it. He needed to find an attorney to do it for him. I mean, what would he have done beforehand? Attempt to pro se file some type of thing to remove his conviction? Your Honor, this may be outside your area of specialty, but let's say that he was convicted of a crime and he wanted to file an appeal and he couldn't find an attorney. Would his post-conviction relief application be told indefinitely while he was looking for an attorney? Not necessarily, Your Honor. I mean, the idea in—I think it's a distinction here where he has to show due diligence in the immigration context. I think that's a little different than when you have a direct appeal of a criminal type of sentence. I think— Because it's a more squishy standard, right, for the due diligence, what is due diligence under immigration. At least as I understood Judge Carson, he was referring to post-conviction relief where generally you're not entitled to appointed counsel. So the point would be that that petitioner or that movement would be in the same posture of being pro se as your client. And then the issue would be, would the law equitably told just because he has a problem getting a lawyer? And my recollection of law is the answer to that is going to be no. And unless you have something that says to the contrary in this context, I'd be happy to see it. But, I mean, but the point is the fact that even if we allow for the 2017 period to be when the clock starts, he needed to be doing something. Well, I think the answer to that, Your Honor, is you look at what the Third Circuit did in the Cruz case, right? Your Honor, it actually says specifically in there where, you know, you have a conviction that has been voided that the timeline doesn't even matter in those instances. That's an exceptional circumstance in which reopening is appropriate there. So your position would be that we have an exceptional circumstance with the passage of this law in 2017 that's going to result in the voiding of his conviction. And so he has no deadlines. I would say, yes, that's what Cruz said in the Third Circuit. Okay. Is it fair that Cruz didn't involve a question of whether there had been diligent prosecution of your claim? I don't, I mean, that was an address there, but there was definitely a reference in that decision to timing and how timing was not, it was an exceptional circumstance here. And, again, I do think that there was due diligence, Your Honor. There was attempts by my client to find counsel. It was a very exceptional situation. And, again, Your Honors, this is a deferential, a deferential standard. But, again, it shouldn't be necessarily toothless in such an extent. And when you look at this Court's jurisprudence, for example, leaning over into areas like substantive reasonableness in the criminal context where you kind of set that line, right? Where does the bottom line lay as far as how deferential is it before it becomes kind of toothless? And here you have the Board's decision speaking out both sides of its mouth, really, Your Honor, saying that this, one, this is a reasonable case. Two, he did undertake efforts. Three, he did undertake efforts. And, three, this, but at the same time, we are not going to reopen it. We are not going to exercise our sua sponte authority. We are not going to find that he exercised due diligence. Well, do we have jurisdiction over their sua sponte? Generally not, Your Honor. But if you see in the decision, there's a problem there because on the third page, the Board starts to mix up the two different lines, right? So, for example, usually sua sponte authority doesn't have anything necessarily to do with due diligence. But they're trying to give a reason as to why they don't want to exercise their due diligence or their sua sponte authority. So they say, well, actually, the petitioner here were not exercising it because of what we previously said, which was that he didn't exercise due diligence. So, necessarily, the Board starts mixing the two standards together. You have kind of a mishmash soup of what you have going on. And so it becomes kind of hard to read in this decision where the Board stops with abusive discretion and due diligence and where it starts with sua sponte authority. I thought sua sponte authority, the reason that we generally cannot review it, is it's a purely discretionary matter, right? It is, Your Honor. And if it is, why can't they consider whether he was diligent or not in deciding whether they want to exercise their discretion? What's legal error about that? Because then at that point, you're mixing in the two standards, necessarily. And it would be one thing if the Board just said, we also declined to exercise our sua sponte authority. But they're saying, we declined to exercise our sua sponte authority based on our previous finding in regards to abusive discretion. Well, if it was in a statement, we declined to exercise our sua sponte authority, period, we'd probably have an argument being made that that was arbitrary because they didn't tell us why they were doing it. Well, they told us why they were doing it. And if it is a purely discretionary decision, why can't they consider anything? I would say, again, Your Honor, if they, then it would make no sense to put the two in different pots, necessarily. If you're considering due diligence under an abusive discretion standard, that's actually something the Court can review. But then the Board also said, oh, we're also doing sua sponte denial. But we're basing it on our finding under the abusive discretion standard. So I think that's the issue. OK. I'm sorry. I didn't mean to interrupt you. No more, Your Honor. I will answer any more questions. But I'd like to reserve for rebuttal unless anyone has more questions. Go ahead, please. Good morning, Your Honors. May it please the Court, Jonathan Needle, Department of Justice, on behalf of the respondent. This is certainly not a case where the petitioner was blindsided that his criminal conviction carried immigration consequences. Starting with the notice to appear that was issued way back in 1998, it was abundantly clear that he was being placed in removal proceedings as an aggravated felon based on his 1995 California conviction. But after the removal order became final in 1999, there was a long period of time when nothing happened. And as the years went on, he might have developed an expectation that the removal order would not be executed, and that if he did anything to upset the status quo, he would place himself at risk for removal. This is a highly consequential decision that he made, and it could be characterized as a strategic decision that perhaps worked out for him for a while. But as he admits in his motion to reopen, it wasn't until January 2025, he became aware of the deportation of individuals, Laotians in his community, that he decided in earnest to pursue his rights. And our position is that the entire timeline from 1999 to 2025 is not subject to equity. Whether you begin in 1999, whether you begin in 2017, none of that time period is subject to equitable tolling. I also want to bring up one point that the petitioner's counsel raised regarding whether the conviction no longer has a legal effect for immigration purposes. The board did not resolve that issue in its decision. It solely resolved the issue of timeliness. What the board does in the first page of its decision is quote the petitioner's motion as saying that his conviction is no longer valid for immigration purposes because of a procedural or substantive defect in the underlying criminal proceedings. Now, there are quotation marks around that language. The board was not accepting the petitioner's representations to that effect. The board did not conduct the relevant legal analysis to make that determination, which would be under the board's decision in matter of Pickering, which this court and virtually every other court has adopted. And so, again, this was not an issue that was resolved by the board, but the motion to reopen itself just doesn't provide much information or any information as to the basis of the vacator. The motion to vacate isn't in the record. The California court's vacator order is simply boilerplate. It quotes the statute. It doesn't identify anything particular to the petitioner's case. So the notion that the government is conceding that the conviction no longer supports the removal order is incorrect, and it was entirely appropriate for the board to resolve the motion on the issue of timeliness. As far as the motion to reopen sua sponte, again, as the court pointed out, this is a decision that's committed to the agency's unfettered discretion, which is why courts generally do not have jurisdiction to review those findings or a decision not to reopen sua sponte. The board thoroughly explained the basis for the motion, thoroughly explained, identified the grounds that the petitioner raised in support of his equitable tolling argument, and based on that determination, the board did not find a sufficient basis for reopening sua sponte. While we don't have jurisdiction over the sua sponte aspect of it, would you concede we do have the ability to see if there was an abuse of discretion on the request to equitably toll? Yes, our position is that there is jurisdiction, but abuse of discretion, as the court is aware, is highly deferential. And there are two elements to that standard, right? The equitable tolling standard, there's a question of diligence and a question of extraordinary circumstances. Is that right? Correct. And they're conjunctive? They're interrelated, but they can be analyzed separately. And in this case, the petitioner was representing that the extraordinary circumstance is the passage of the California law in 2017. No evidence that the petitioner was aware of that law until he obtained representation in 2025. And as the board indicated, ignorance of the law does not provide a basis for tolling. I guess what I'm getting at is if both of those criteria are at play, the question of how one should view the framing of petitioner's argument. Because it seemed the petitioner was focusing, to some extent, on the question of diligence, and that's what the board focused on. And you have to argue both, right? That's correct. Is it your understanding that he has done that? Not sufficiently. I mean, insofar as the petitioner has identified what he considers to be an extraordinary circumstance, the board took note of that and found that it didn't qualify as an extraordinary circumstance, also because of the fact that he didn't take any meaningful action to pursue his rights until 2025. So that undermined his argument that this particular, the passage of this statute in 2017 was sort of the triggering event for him to take action and exercise diligence. And that speaks to the diligence component. In other words, the argument would, you can say that the 2017 change of law was an extraordinary circumstance, but you still have to argue that you acted on it, right, in a diligent fashion. That's correct. And the law doesn't give the petitioner an indefinite amount of time to take meaningful action to pursue his rights. And the evidence that the petitioner submitted in his motion to reopen, frankly, shows the antithesis of diligence, you know, largely consisting of five pages of incomplete email chains sent over a period of eight years, you know, with very little information that's case specific, no indication that the petitioner was routinely following up with these individuals who he was contacting. There are some medical records in there, but, I mean, there isn't even a declaration accompanying the motion to reopen where the petitioner, you know, explains why, you know, these medical issues or why his, you know, inability to procure counsel, you know, should be, you know, are relevant to the issue of diligence. There are some unsworn statements by counsel in the motion itself. There's a timeline which is also unsworn. And, you know, at the very least, there would need to be a sworn statement by the petitioner attesting to his exercise of diligence. And, again, this is an abuse of discretion standard of review, and it was entirely within the board's discretion, you know, given the high burden that a petitioner has in seeking to reopen his proceedings, it was entirely within the board's discretion to deny his motion because it was untimely and because he didn't demonstrate entitlement to equitable tolling. So if he had executed a declaration that said I, for a period of eight years, contacted, you know, 18 attorneys attempting to get representation for this matter, but I was never able to afford a retainer and nobody would take my case pro bono until 2025, would that be sufficient diligence in your mind? Well, if the tolling period begins until 2017, I think that presents a different scenario. Well, just start it at 2017. Well, I mean, it's our position that you have to go back to 1999 to look whether he acted with diligence. No, I understand that. I want you to begin, though, let's assume that it starts in 2017 and that he had eight years and that he made the efforts that I just, that he put that declaration in the record. Would that be sufficient diligence? I mean, that would be a very different scenario, and there would need to be some explanation as to whether these were, you know, meaningful efforts to secure representation. You know, simply providing a list of e-mails or phone calls probably wouldn't illuminate the issue very well. And again, it's a discretionary call on the part of the board. The board can look at that and say, no, this does not amount to due diligence. And the only reason why this court would disturb that determination is because of an abuse of discretion. And here the petitioner hasn't even begun to show that the agency acted outside its discretion in denying his motion. And also, just to address the Third Circuit's Cruz decision, it's definitely an outlier. It didn't involve a question of diligence. I mean, I'm sorry, it did not involve a question of, it involved a question of sua sponte, reopening. And the court in Cruz did not definitively say that there was an agency course of adjudication to reopen cases sua sponte, where the conviction underlying the removal order is vacated. The Third Circuit stopped well short of saying that, and it also indicated that where a petitioner sleeps on his rights for an extended period of time, that may not preclude the agency from denying to reopen sua sponte. It stopped short of saying what? It stopped short of saying that there was an agency pattern or practice of reopening in cases where the underlying conviction, the underlying basis for the removal order is vacated. The issue was whether the board had sufficiently articulated, explained its reason to deny sua sponte reopening, and Third Circuit just ended up remanding on that particular issue. But that's very different from what we have here, where the board explained in detail, and, you know, referred to the petitioner's allegations and claims, and gave full consideration and found that it did not warrant the exercise of sua sponte authority. So, if there are no more questions, thank you very much. Thank you, counsel. Your Honors, again, counsel brings up the term sufficient articulation. I think that's a good standard of what the board's decision is missing here. The board's decision does say multiple things. It goes into depth about due diligence and both why and why not it should grant the decision, or it should grant the motion to reopen. So, in one side, the board says this is a sympathetic case. It also says petitioner has undertaken efforts to obtain post-conviction relief, but on the other hand, it says, well, actually, no, we're not going to grant the motion to reopen, even though this is a sympathetic case, and there's no diligence, that type of thing. So you have the board failing to sufficiently explain why it's going in the direction it's going. It does make reference to due diligence and talk about that. But at the same time, it says in a different part that petitioner did undertake efforts to obtain post-conviction relief. Well, that doesn't mean they were diligent. It just means that he did it, ultimately. The board also, Your Honor, I understand that. The board also, Your Honor, does acknowledge the multiple hardships that the petitioner faced during that period. Significant health issues, having to care for his father, his father's health issues. In addition, having economic instability, housing instability during that time, also taking place during the COVID pandemic. Your Honors, I am out of time. Unless Your Honors have any other questions, I will step down. No, thank you, Counselor. Thank you, Your Honors. Case is submitted.